The PEOPLE of the State of Colorado, Complainant,

v.

Donald James QUIGLEY, Respondent.

No. 14PDJ020.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Sept. 18, 2015.

Following a hearing on the sanctions, a hearing board suspended Donald J. Quigley (Attorney Registration Number 24752) for one year and one day, effective October 23, 2014. If Quigley comes into compliance with

his court-ordered child support obligations during that period of suspension, however, he may seek reinstatement early and serve a three-year period of probation. The Colorado Supreme Court affirmed the hearing board's decision on September 4, 2015.

Following the dissolution of his marriage in 2007, Quigley was ordered to pay $2,000.00 per month in child support. In 2011, he moved to modify that order, and then reduced his monthly support payments without court approval. More than a year later, a magistrate ruled on Quigley's motion, ordering him to pay child support arrearages of more than $11,000.00 but reducing his monthly payments to approximately $650.00. Respondent's petition for review of these orders was denied. He then unilaterally reduced his payments even further, to about $150.00 per month. As of the date of his disciplinary hearing, Quigley had not paid anything toward the arrearages.

Because Quigley knows he was obligated to pay approximately $650.00 a month in child support and more than $11,000.00 in arrearages yet has not complied with either obligation, he contravened Colo. RPC 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal). By knowingly failing to satisfy the arrearages and to pay the monthly child support amounts, Quigley also breached Colo. RPC 8.4(d) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

On July 22, 2014, a Hearing Board consisting of Jerome A. DeHerrera and Andrew A. Saliman, members of the bar, and William R. Lucero, the Presiding Disciplinary Judge ("the PDJ"), held a sanctions hearing pursuant to C.R.C.P. 251.18. Brooke H. Meyer attended on behalf of the Office of Attorney Regulation Counsel ("the People"), and Donald James Quigley ("Respondent") appeared pro se. The Hearing Board now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

## I. SUMMARY

The PDJ issued a judgment on the pleadings concluding that Respondent violated Colo. RPC 3.4(c) and 8.4(d) by failing to obey court orders to pay monthly child support and to satisfy child support arrearages. The Hearing Board now determines that Respondent's failure to honor his court-mandated child support obligations tarnished the integrity of the legal system and harmed his children and ex-wife. Respondent's misconduct calls for a suspension of one year and one day. If Respondent comes into compliance with his court-ordered support obligations during that period of suspension, however, he may seek reinstatement early and serve a three-year period of probation.

## II. PROCEDURAL HISTORY

On September 11, 2013, Respondent was immediately suspended pursuant to C.R.C.P. 251.8.5 for failing to pay child support. He remains immediately suspended from the practice of law.

The People filed their complaint in this matter on March 4, 2014, alleging that Respondent violated Colo. RPC 3.4(c) and 8.4(d) by failing to pay court-ordered child support. Respondent answered the complaint on March 25, 2014, admitting a substantial number of the factual allegations. The People filed a "Motion for Judgment on the Pleadings" on April 9, 2014, and Respondent responded on April 30, 2014. On May 19, 2014, the PDJ granted the People's motion and converted the disciplinary hearing to a sanctions hearing.

During the sanctions hearing on July 22, 2014, the Hearing Board heard testimony from Dr. Antoinette Quigley and Respondent. The Hearing Board also considered Respondent's exhibit A and the parties' arguments concerning sanctions.

## III. FACTS AND RULE VIOLATIONS

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 14, 1994, under attorney registration number 24752.[1] He is

1. Respondent's registered business address is    2245 South Yosemite Street, Denver, Colorado

thus subject to the jurisdiction of the Hearing Board in these disciplinary proceedings.[2]

## Facts Established in the Pleadings

On April 27, 2007, Respondent and Dr. Antoinette Quigley, parents of three children, filed for divorce in Denver District Court.[3] The case was styled *In re Marriage of Antoinette Quigley, Petitioner, and Donald Quigley, Co–Petitioner/Respondent,* case number 2007DR1311.[4] The court entered permanent orders on September 27, 2007, requiring Respondent to pay $2,000.00 per month in child support.[5]

On April 19, 2011, Respondent filed a verified motion to modify the child support order.[6] On that same day, he also filed a motion to proceed *in forma pauperis* along with a sworn financial affidavit.[7] Respondent then began to pay $240.00 a month in child support, even though he had not received permission from the court to reduce his payments.[8]

In December 2011, the court ordered the parties to attend mediation concerning Respondent's request for modification of child support.[9] An unsuccessful mediation was held on February 16, 2012.[10] On June 11, 2012, the magistrate held an evidentiary hearing on Respondent's motion to modify child support.[11] Both parties testified and produced financial information.[12]

The magistrate entered findings of fact, conclusions of law, and orders on August 13, 2012, finding that although Respondent's financial condition had changed considerably since the original child support orders, he was nonetheless "capable of earning substantially more than minimum wage due to his education and past history of employment." [13] The magistrate imputed to Respondent $5,000.00 per month in income.[14]

On September 15, 2012, the magistrate ordered that Respondent pay child support arrearages in the amount of $11,286.17.[15] Respondent has paid nothing toward this judgment.[16] On November 9, 2012, the magistrate set Respondent's child support payment at $652.03 per month, effective July 1, 2012, and lasting until the emancipation of his remaining minor child.[17]

Respondent petitioned the district court for a review of the magistrate's orders on December 5, 2012.[18] The district court denied this petition as untimely.[19] On February 14, 2013, Respondent filed a notice of appeal of that ruling with the Colorado Court of Appeals.[20] Also in February 2013, Respondent reduced his child support payments to $150.00 per month without permission from the magistrate.[21] When Respondent filed his attorney registration statement in 2013, he indicated that he was not in compliance with his child support obligations.[22] The court of appeals affirmed the district court's order on February 7, 2014.[23]

80231. Compl. ¶ 1; Answer ¶ 1.

2. *See* C.R.C.P. 251.1(b).

3. Compl. ¶ 2; Answer ¶ 2.

4. Compl. ¶ 2; Answer ¶ 2.

5. Compl. ¶ 3; Answer ¶ 3.

6. Compl. ¶ 4; Answer ¶ 4.

7. Compl. ¶ 5; Answer ¶ 5.

8. Compl. ¶ 6; Answer ¶ 6.

9. Compl. ¶ 10; Answer ¶ 10.

10. Compl. ¶ 11; Answer ¶ 11.

11. Compl. ¶ 13; Answer ¶ 13.

12. Compl. ¶ 13; Answer ¶ 13.

13. Compl. ¶ 14; Answer ¶ 14.

14. Compl. ¶ 14; Answer ¶ 14.

15. Compl. ¶ 15; Answer ¶ 15.

16. Compl. ¶ 15; Answer ¶ 15.

17. Compl. ¶ 16; Answer ¶ 16.

18. Compl. ¶ 17; Answer ¶ 17.

19. Compl. ¶ 18; Answer ¶ 18.

20. Compl. ¶ 19; Answer ¶ 19.

21. Compl. ¶ 20; Answer ¶ 20.

22. Compl. ¶ 21; Answer ¶ 21.

23. Compl. ¶ 22; Answer ¶ 22.

### Additional Findings Based on Testimony and Evidence

Respondent testified that after graduating from law school, he secured employment at a firm specializing in bankruptcy reorganization. In 2007, his then-wife, Dr. Quigley, filed for divorce after a twenty-five year marriage. The divorce was finalized in 2007.

In 2008, the law firm Respondent was working for "imploded" when a founding partner left, taking a number of clients with him.[24] Several people were fired, including Respondent. He recalled assuming initially that he would get a new job, and he continued to pay $2,000.00 a month toward child support, first dipping into savings, then taking cash advances from his credit card. By 2011, he testified, he was "wiped out" financially, having been unable to find any legal work.

As noted above, Respondent filed a motion to modify child support in April 2011 and unilaterally reduced his support payments to reflect, he said, his actual earnings. In fall 2012, the magistrate ruled on his motion, producing a two-part order: the magistrate found that Respondent should pay $652.03 per month going forward [25] and that Respondent owed child support arrearages of $11,286.17, including interest accruing from August 1, 2012.[26] The magistrate's findings were, in part, based on her conclusion that "[a]t no time during [the modification of child support] proceedings did [Respondent] provide a sworn statement of earnings from self-employment," nor did he "present as evidence any applications or other written evidence of his job searches." [27]

At the sanctions hearing, Respondent challenged the magistrate's findings as "false," insisting that he had submitted to the magistrate "a bunch of three-ring binders" full of job applications that he had once completed. He did not, however, seek to introduce any such binders or applications into evidence before the hearing board. In response to the People's intimation that for several years he has been voluntarily underemployed, he contended that before early 2013—when the People began their disciplinary investigation—he was applying for upwards of ten jobs a week, yet there were never any "bites." He testified that to earn money he has worked as a janitor, a house painter, and a tax preparer. Until his license was administratively suspended, he also spent up to twenty hours per month doing pro bono legal work for recovering alcoholics. He estimated that he has been making approximately $2,000.00 per month in cash painting houses, although he acknowledged that he has not provided the People with any proof of income.

Respondent testified that "there was never a point in time where [he] could have done something different" because there "was never a moment [he] could have paid" the full monthly payments or the arrearages. He has not reapplied for modification of his child support obligations, reasoning that no new facts or circumstances exist that would allow him to obtain a reduction. He also related that the Colorado Court of Appeals resolved in his favor an issue involving the division of marital property in 2011, awarding him "at least $19,341, plus interim earnings" in restitution.[28] He has not sought to collect on that judgment, nor has he discussed that decision with Dr. Quigley.

Dr. Quigley, who works for Kaiser Permanente as a physician, conceded that because she can support her three children, Respondent's failure to pay child support has not harmed them financially. But she testified to the psychological harm that Respondent's conduct has caused their children, as well as the frustration that his failure to obey court orders has occasioned. Their children have all sought therapy, she recounted, in order to address what they perceive is Respondent's choice not to contribute to their financial well-being, which they view as a manifestation of his lack of interest in their lives.

---

24. Respondent's Hrg. Br. re Sanctions at 2.

25. Stip. Ex. 8.

26. Stip. Ex. 7.

27. Stip. Ex. 6 ¶ 9.

28. Respondent's Hrg. Br. re Sanctions at 5 n. 3.

Dr. Quigley described Respondent's "refusal to acknowledge any of the orders" concerning child support as "wearing," relating, "I have to do what the court says, but he doesn't. He is bound as an officer of the court, but it is frustrating that he thinks he doesn't have to comply. I have to give him part of my retirement [by order of the court concerning division of marital property], even after he repeatedly doesn't comply with orders. It just seems wrong." Because she believes it is "objectionable" that Respondent, as an attorney, has suffered "no consequence for ignoring court orders," she expressed a preference that Respondent be penalized, even if that penalty would hamper his ability to earn money for child support payments.

### Rule Violations

In granting the People's motion for judgment on the pleadings, the PDJ determined that Respondent violated Colo. RPC 3.4(c), which provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." The PDJ concluded the complaint and answer establish that Respondent knows he is obligated to pay $652.03 a month in child support and $11,286.17 in arrearages yet has not complied with either obligation, thereby contravening Colo. RPC 3.4(c).

The PDJ also concluded that Respondent breached Colo. RPC 8.4(d), which proscribes conduct that is prejudicial to the administration of justice. By knowingly failing to satisfy the arrearages and to pay the monthly child support amounts, the PDJ determined, Respondent has engaged in conduct prejudicial to the administration of justice.[29]

### IV. SANCTIONS

■ The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the determination of sanctions for lawyer misconduct.[30] In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Lawyers are officers of the court and must obey all court orders, just as members of the public are bound to do. By failing to pay court-ordered child support and unilaterally reducing his monthly payments, Respondent has operated outside the bounds of the law, flouted his obligations under the rules of a tribunal, and violated his duty to the legal system he has pledged to uphold.

*Mental State:* The PDJ's order granting judgment on the pleadings concluded that the People had proved every element of their Colo. RPC 3.4(c) claim, which expressly requires proof of a knowing mental state. In that order, the PDJ rejected Respondent's argument that he should not be disciplined because he has a good faith basis for failing to comply with the magistrate's orders, namely that he is financially unable to make payments. The PDJ concluded that the facts show Respondent attempted to modify his child support obligations in the district court based upon his alleged financial situation but, after a full evidentiary hearing, the magistrate denied his request. The Hearing Board concurs in that finding and concludes that Respondent knew he was under court order to pay child support yet failed to do so.[31]

---

**29.** *See In re Green*, 982 P.2d 838, 838–39 (Colo. 1999) (approving the hearing board's finding that the respondent engaged in conduct prejudicial to the administration of justice by willfully failing to comply with a court-ordered child support obligation); *People v. Hanks*, 967 P.2d 144, 145 (Colo.1998) (same).

**30.** *See In re Roose*, 69 P.3d 43, 46–47 (Colo. 2003).

**31.** Knowledge is defined as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA *Standards* § IV, Definitions.

*Injury:* Respondent's failure to fully pay his court-ordered child support has harmed his children and his ex-wife. As Dr. Quigley testified, Respondent's minimal contribution to his children's financial well-being has hurt them psychologically, causing them to seek therapy. Respondent's misconduct has also taken an emotional, though not a significant financial, toll on Dr. Quigley, who clearly is frustrated by Respondent's attitude toward his child support obligations. Just as important to the Hearing Board, Respondent's conduct has clearly undermined Dr. Quigley's trust that the legal system treats lawyers and nonlawyers equally and metes out justice without regard to a litigant's status.

Finally, Respondent's conduct has caused actual injury to the legal system. As a lawyer, Respondent is required to abide by legal rules and court orders to promote the administration of justice, yet he disregarded this obligation by unilaterally deciding to decrease his child support contributions. When lawyers—who are expected to comport themselves as officers of the court—shun their court-mandated responsibilities, as has Respondent, it reflects poorly upon all lawyers and the legal system in general.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Suspension is the presumptive sanction for Respondent's misconduct in this case, as set forth in ABA *Standard* 6.22, which governs a lawyer's knowing violation of a court order or rule that results in injury or potential injury to a party or interference or potential interference with a legal proceeding.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating factors are considerations or circumstances that may justify an increase in the presumptive discipline to be imposed, while mitigating factors may warrant a reduction in the severity of the sanction.[32] The Hearing Board considers evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction.

*Dishonest or Selfish Motive—9.22(b):* Respondent's misconduct is not dishonest; he has been candid in admitting that he has paid neither the full monthly child support amounts nor the arrearages. The Hearing Board does find, however, that Respondent's conduct is selfish. As explained below, we do not credit Respondent's testimony that he has done all he can to satisfy his child support obligations. He has shirked his responsibilities, evincing disrespect for his children, the mother of his children, and the court. The Hearing Board considers this a factor in aggravation.

■ *Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* Respondent has refused to take any responsibility for his behavior, portraying himself solely as a victim of unfortunate circumstances. We consider this a substantial aggravating factor.

We first note that absent from Respondent's testimony or argument was any acknowledgement that his behavior has affected his children on an emotional level at all. Instead, he focused exclusively on the lack of financial harm he has caused, going so far as to note that his youngest son, in particular, has not suffered because his son has gotten "outrageous tips" working over the summer at a local country club. Respondent's failure to acknowledge the emotional impact his actions have had on his children strike us as more than sufficient to apply this as a aggravator.

But we also conclude that Respondent failed to acknowledge that he could have taken action—but did not—to come into compliance with court orders. First in opposition to the People's motion for judgment on the pleadings, and then in his hearing brief, he raised his inability to pay as a complete defense to liability or imposition of sanctions. Indeed, he has repeatedly justified his behavior by maintaining that "payment was simply impossible as a factual matter."[33] But just as with the underlying modification proceedings, Respondent has not directed the Hearing Board to any evidence that would show

---

**32.** *See* ABA *Standards* 9.21 & 9.31.

**33.** Respondent's Hrg. Br. re Sanctions at 2.

he has been unable to lend greater financial assistance to his children.

To the contrary, Respondent acknowledged that the Colorado Court of Appeals resolved in his favor an issue involving the division of marital property in 2011, awarding him over $19,000 in restitution. Although he testified that he believes he is entitled to offset that award against his child support arrearages, he has never sought to collect on the judgment, resolving instead to "let that slide." That Respondent has failed to pursue collection of this judgment—even if just to return those funds to Dr. Quigley as an offset against his child support arrearages—suggests to the Hearing Board that Respondent has consciously chosen to remain in violation of a court order when he could have taken action to remedy his noncompliance.

During his testimony, Respondent also dismissed out of hand the option of again seeking modification of the magistrate's orders, reasoning that no new facts or circumstances exist that would allow him to seek a reduction. "I don't get a second bite at [the family court] apple," he declared. But there are reasons to suspect that he could have successfully sought readjustment of his monthly child support payments after his law license was suspended in September 2013. Respondent has not pursued that avenue, however, even though doing so might have resulted in new child support orders more consistent with the monthly contributions he has been making. His failure to do so also points toward a conscious choice to remain noncompliant.

*Vulnerability of Victims—9.22(h):* Respondent's failure to comply with his child support obligations emotionally affected his three minor children, who are properly considered vulnerable victims.[34] The law charges parents with providing for their children precisely because they are not yet capable of doing so themselves.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the Colorado bar twenty years ago, in 1994. He thus has substantial experience as a lawyer.

*Absence of a Prior Disciplinary Record— 9.32(a):* Respondent has not been sanctioned for misconduct before. We consider this a factor in mitigation.

*Full and Free Disclosure to Disciplinary Board or Cooperative Attitude Toward Proceedings—9.32(e):* Respondent has participated in this proceeding and has been forthcoming about the financial contributions he has made to his children's care. On the other hand, Respondent submitted his exhibit A at the sanctions hearing without having earlier produced that document to the People during discovery. We therefore assign minimal weight to this mitigating factor.

*Imposition of Other Penalties or Sanctions—9.32(k):* Since September 11, 2013, Respondent has been suspended from the practice of law pursuant to C.R.C.P. 251.8.5 for failing to pay child support. We consider his immediate suspension a circumstance in mitigation.

### Analysis Under ABA *Standards* and Case Law

The Hearing Board is mindful of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[35] since "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[36] Though prior cases are helpful by way of analogy, the Hearing Board is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

■ First, we address Respondent's argument that, based on his financial situation, he could not have complied with the court's child

---

34. *See Green,* 982 P.2d at 839 (noting that the hearing board deemed the respondent attorney's children to be vulnerable victims).

35. *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

36. *In re Attorney F.,* 285 P.3d at 327 (quoting *In re Rosen,* 198 P.3d 116, 121 (Colo.2008)).

support orders. He analogizes, "If someone ordered you to flap your wings and fly to the moon and you didn't, what should be done?" The Hearing Board is receptive, in theory, to such an argument; we understand that in some cases, an attorney may encounter circumstances that could render full compliance with court-ordered child support impossible. But this is not such a case.

Just as the magistrate noted in the underlying child support matter, the Hearing Board has received no evidence that Respondent was unable to obtain work on par with his actual earning potential, and we have no reason to second-guess the magistrate's findings. Further, Respondent did not demonstrate that he ever made any effort to offset his past-due child support obligations with existing assets. Nor did he show that he requested modification of the magistrate's child support award based upon the changed circumstances of his immediate suspension, even though, given his credentials, skills, and experience, he is far better equipped than many similarly situated litigants to seek relief from child support orders. We therefore do not credit his defense that he never had the ability to comply with his court-mandated child support obligations.

■ Next, we turn to an analysis of the proper sanction. Under the ABA *Standards,* the presumptive sanction for Respondent's misconduct is suspension. Colorado Supreme Court case law also supports the imposition of a period of suspension for failure to pay child support. We look, in particular, to three cases.

In *In re Green,* an attorney knowingly failed for five years to pay over $11,000.00 in court-ordered child support and failed to file his attorney registration statement.[37] Green had earlier appealed the child support orders, but his appeal was rejected on the grounds that "much of [Green's] ability to meet his support obligations stems from his own decisions and unwillingness to obtain work that is commensurate with his true potential earning capacity."[38] The Colorado Supreme Court suspended Green for one year and one day but held that, were Green to demonstrate within the period of suspension that he had paid his past-due child support or negotiated a payment plan approved by the appropriate court, he could be reinstated and placed on a three-year period of probation.[39]

In *People v. Hanks,* an attorney who willfully failed to pay child support was suspended for one year and one day.[40] There, Hanks had been ordered to pay $20,000.00 in past-due child support and $1,500.00 per month for his three children going forward.[41] Although Hanks paid some money toward child support, he made little or no financial contribution over a three-year period; at the time of the disciplinary hearing, he was $55,282.62 in arrears and a finding of contempt against him had not been dismissed.[42] And in *People v. Jaramillo,* an attorney was suspended for one year and one day for violating state laws and for failing to pay court-ordered child support.[43] Because Jaramillo amassed child support arrearages of $11,296.77 over several years, making only a few payments to reduce that amount, his driver's license was suspended; Jaramillo was then involved in a car accident, and he was charged with driving with a suspended license, driving without insurance, and leaving the scene of an accident.[44]

We contrast these cases with two others imposing public censure. In the first, *People v. Primavera,* an attorney was held in contempt for failing to pay approximately $3,000.00 in child support over a four-month period.[45] Per the court's contempt order, however, Primavera timely paid the arrear-

---

37. *Green,* 982 P.2d at 838.

38. *Id.* (quoting *Green v. Marcucci,* No. 26,004, 112 Nev. 1719, 999 P.2d 378 (Nev. Mar. 1, 1996) (order dismissing appeal)).

39. *Id.* at 839.

40. 967 P.2d at 145.

41. *Id.*

42. *Id.* at 145–46.

43. 35 P.3d 136, 138–39 (Colo. 1999).

44. *Id.* at 138.

45. 904 P.2d 883, 884 (Colo. 1995).

age in full prior to the disciplinary hearing, attorney's fees were ultimately paid, and the contempt citation was dismissed.[46] In the second, *People v. Cantrell,* the Colorado Supreme Court accepted a recommendation of public censure when an attorney negligently handled client funds and failed to pay his child support.[47] Cantrell was held in contempt when a court concluded that he willfully failed to comply with child support orders, but the contempt citation was ultimately dismissed in a settlement with Cantrell's former spouse.[48] At the time of the disciplinary hearing, Cantrell was in compliance with the terms of settlement, including his child support obligations.[49]

Like the conduct described in *Green, Hanks,* and *Jaramillo,* Respondent has knowingly failed to pay a significant amount of child support—over $11,000.00 in arrearages, including interest accruing from August 2012. Unlike the attorneys in *Primavera* and *Cantrell,* Respondent has not yet come into compliance with court orders. From these cases we conclude that Respondent's knowing failure to pay child support over a period of years—continuing up until today—warrants a suspension, rather than a public censure. Nevertheless, *Hanks* and *Jaramillo* involve somewhat more aggravated instances of misconduct than that present here. In *Jaramillo,* the attorney had also committed criminal misconduct, and in *Hanks* a finding of contempt still remained outstanding. Considering the totality of the circumstances, *Green* most closely parallels this case, and we adopt the discipline imposed there as fitting in this situation.

We therefore suspend Respondent for one year and one day, provided that if, during that period, Respondent demonstrates by filing a verified petition that he has paid all arrearages and past-due child support or that he has negotiated a payment plan approved by the appropriate court, then he may be reinstated pursuant to the procedures outlined in C.R.C.P. 251.8.5(d). If so, he shall then be placed on probation for three years. If Respondent has not filed such a verified petition before the expiration of one year and one day, then he must petition for reinstatement pursuant to C.R.C.P. 251.29(c), and a condition of his reinstatement shall be that he has paid all arrearages and past-due child support. We impose this sanction recognizing that Respondent has committed "serious professional misconduct"[50] while also seeking a "practical and meaningful way" to motivate him "to make a good-faith effort to satisfy [his] obligations" promptly.[51]

## V. CONCLUSION

Respondent knows that he is obligated under court orders to pay $652.03 a month in child support and over $11,000.00 in arrearages. He also knows that he is not in compliance with either obligation. The People established in the pleadings that through such conduct, Respondent violated Colo. RPC 3.4(c) and 8.4(d). The Hearing Board now concludes that the harm Respondent has caused his children and the legal system warrants a suspension of one year and one day, provided that Respondent is given the opportunity to seek reinstatement at an earlier time if he satisfies his court-ordered child support obligations.

## VI. ORDER

The Hearing Board therefore **ORDERS:**

1. **DONALD JAMES QUIGLEY,** attorney registration number **24752,** is **SUSPENDED FOR ONE YEAR AND ONE DAY.** The **SUSPENSION SHALL** take effect only upon issuance of an "Order and Notice of Suspension."[52]

---

46. *Id.*

47. 900 P.2d 126, 127 (Colo.1995).

48. *Id.* at 127–28.

49. *Id.* at 128.

50. *Primavera,* 904 P.2d at 885.

51. *Green,* 982 P.2d at 839.

52. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

a.  If at any time prior to the expiration of one year and one day, Respondent demonstrates to the PDJ by filing a verified petition that he has paid all arrearages and past-due child support obligations or that he has negotiated a payment plan approved by the appropriate court, then he may be reinstated pursuant to the procedures outlined in C.R.C.P. 251.8.5(d). If so, he shall then be placed on probation for three years, with the condition that he shall not violate any Rules of Professional Conduct.

b.  If Respondent has not filed such a verified petition before the expiration of one year and one day, then he must petition for reinstatement pursuant to C.R.C.P. 251.29(c). A condition of Respondent's reinstatement shall be that he has paid all arrearages and past-due child support obligations.

2.  If applicable, Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)–(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3.  Within fourteen days of issuance of the "Order and Notice of Suspension," Respondent **SHALL** comply with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the PDJ setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.

4.  The parties **SHALL** file any post-hearing motion or application for stay pending appeal with the Hearing Board **on or before Thursday, October 9, 2014.** No extensions of time will be granted. Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the PDJ.

5.  Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs" **within fourteen days of the date of this order.** Any response thereto **SHALL** be filed within seven days, unless otherwise ordered by the PDJ.